HEARD NOVEMBER TERM, 1877.

## LOWRANCE *vs.* ROBERTSON.

In an action to recover damages for the breach of a covenant of warranty in a sale of lands, brought by a purchaser from the covenantee, the measure of damages is the consideration money paid by the covenantee, with interest thereon from the time of the sale and the costs of the action to eject the plaintiff, and not the price paid by the plaintiff for the land.

In an action by a purchaser of land from the covenantee against the covenantor to recover damages for a breach of the covenant, voluntary payments made by the covenantor to the covenantee and to the owners of the land for the use thereof, *held* to be no defense to the action.

BEFORE KERSHAW, J., AT RICHLAND, AUGUST, 1877.

This was an action by Rufus N. Lowrance, William B. Lowrance and Joseph R. Black against Thomas J. Robertson, executor of John Caldwell, deceased.

The case will be fully understood from the report of the Referee, the exceptions thereto and the judgment of the Circuit Judge.

The report of the Referee is as follows:

The complaint alleges:

1. That on March 24, 1851, John Caldwell, in consideration of five thousand dollars paid to him by Samuel Pearse, conveyed by deed to said Samuel Pearse, in fee simple, the premises described in the complaint, and that the said John Caldwell, then and there, by the said deed, covenanted for himself, his heirs, executors and administrators to warrant and forever defend all and singular the said premises unto the said Samuel Pearse, his heirs and assigns, against all persons whomsoever lawfully claiming or to claim the same or any part thereof.

2. That on August 27, 1869, Daniel B. Miller, Clerk of the Court of Common Pleas for the County aforesaid, by virtue of certain proceedings in the Court of Equity and Court of Common Pleas, upon a bill filed by Susannah M. Pearse, on or about the day of          , 1867, at Columbia, in said County and State, against Andrew W. Lewis, Elizabeth Lewis and others, praying among other things the sale of said premises as the property of said Samuel Pearse, did convey by deed to the plaintiffs in fee simple, for the sum of four thousand dollars, the premises aforesaid, and also the estate, right, title, interest, dower, possession, property, benefit, claim and demands whatsoever of the devisees, and of the

heirs-at-law of said Samuel Pearse, who had died in possession of said premises, after having devised them, and of all the parties to said proceedings, and all other persons rightfully claiming or to claim the same or any part thereof, by, from or under them, or any of them.

3. That Olivia R. McGowan, Henrietta McGowan, Agnes Hydrick, her husband, Jacob Hydrick, William B. McGowan, Sallie F. Drennan, her husband, John Drennan, and Mary McGowan, the lawful owners of said premises, on May 12, 1873, entered into the said premises and ejected and removed the plaintiffs by action in the Court of Common Pleas, at Columbia, in said County and State, and due process of law, from the occupation and possession of the same, and have ever since kept them out of the same.

4. That by reason thereof the plaintiffs have not only lost the said premises, but have been obliged to pay, to wit, on July 3, 1873, the sum of five hundred and sixty-seven dollars and ninety-four cents, taxed costs in the action aforesaid, prosecuted against them for the recovery of said premises.

5. That before the commencement of said action, John Caldwell died, leaving Oscar A. Caldwell and Thomas J. Robertson executors of his will, both of whom duly qualified thereon, and that said Oscar A. Caldwell died, leaving said Thomas J. Robertson sole surviving executor.

6. That plaintiffs gave due notice to said surviving executor of the pendency of said action, and to come in and support their title and defend said action.

7. And the plaintiffs demand judgment against Thomas J. Robertson as such surviving executor, for five thousand dollars, with interest from March 24, 1851, and for five hundred and sixty-seven dollars and ninety-four cents, with interest from July 3, 1873, and for costs and disbursements.

The answer:

1. Denies knowledge of the truth of the 1st, 2d, 3d and 4th paragraphs of the complaint.

2. Admits the truth of the 5th paragraph.

3. Denies the truth of the statements contained in the 6th paragraph of the complaint. .

At the hearing the defendant admitted the truth of each and every allegation of the complaint.

The defendant introduced the following evidence:

1. The paper herewith filed and marked "A," which was a receipt bearing date March 2, 1876, signed by McMaster & LeConte, attorneys for Olivia McGowan and others, the children of Sarah P. McGowan, deceased, to Thomas Robertson, executor of John Caldwell, deceased, for "one thousand dollars in full of all claims for mesne profits, rents and damages of every kind against the said John Caldwell, deceased, and all others claiming title immediately and subsequently, directly and indirectly, as his grantees, and as grantees in succession of his grantees" of the premises in question, to which receipt I desire that reference shall be had.

2. The bond and mortgage of the plaintiffs to D. B. Miller, Clerk of the Court. The bond bears date August 27, 1869, penalty $8,000; condition, $4,000 payable five years from the ninth day of January, 1869, with interest on the whole, payable semi-annually from said ninth day of January, 1869.

Upon this bond are the following endorsements:

"$140. The interest on this bond to 9th day of July has been paid to me and remitted to the life tenant.

                    " W. S. MONTEITH, Solicitor."

"Received, Columbia, September 20th, 1869, $90.44, city taxes, 1868 and 1869.

                    " D. B. MILLER, C. C. P."

"$163. Received, Columbia, September 20th, 1869, $163 on within bond, being for State taxes, $110; Commissioners, $40; costs, $10; titles, $3.

                    "D. B. MILLER, C. C. P."

"$139.40. Received, Columbia, January 9th, 1870, of R. N. Lowrance $139.40, in full to this date.

                    "D. B. MILLER, C. C. P."

[It was here shown that the principal, at the last date, was reduced to $3,840.]

"$139.40. Received $139.40 on this bond this day, November 12, 1870.

                    "W. S. MONTEITH, Solicitor."

"$139.40. Paid by W. B. Lowrance, November 1st, 1871, by check on Central National Bank.

"W. S. MONTEITH."

The foregoing payments were made by the plaintiffs. There then follows the following endorsement on the bond :

"$1,500. This bond is this day satisfied in full by the payment of $1,500 by T. J. Robertson, executor of John Caldwell, who was the grantor and warrantor to Samuel Pearse of the land which was the consideration of this bond, the same being so received in accordance with the order of Court of date March 10th, 1876.

"W. S. MONTEITH,

"Attorney for D. B. Miller, Clerk and Solicitor of Estate. March 11, 1876."

The whole of this evidence was objected to by the plaintiffs on the grounds—

1. That it could not be introduced under the pleadings; and

2. That it was irrelevant, and therefore inadmissible. It was, however, admitted that the papers were genuine, and that the bond and mortgage constituted the consideration for the purchase of the land by the plaintiffs from Miller. The evidence was introduced by way of *puis darrein* continuance, having been discovered and performed since the commencement of the action, but without any formal plea. I overruled the objection and admitted the evidence. The proceeding under which the payment of fifteen hundred dollars in satisfaction of the bond is purported to have been made was not in evidence before me. It was agreed at the hearing that the complaint should be regarded as amended so as to change the payment by the plaintiffs of thirty-two dollars and fifty cents costs, paid July 3, 1873. I have stated the pleadings and evidence with great particularity in order that any errors may be the more readily corrected by the appellate tribunal.

The issues of law presented are—

1. What is the measure of damages or other compensation to which the plaintiffs are entitled on eviction by paramount title?

2. To what extent have these damages been discharged by the defendant? And, as subsidiary to the latter,—First, whether the payments were not voluntary payments of the debt of another, and

such as could not be recovered against the plaintiffs? Secondly, whether under the circumstances the defendant can set off the mesne profits paid against the interest to be paid by him. Third, whether in case the payments are admitted the defendant should not be restricted to the fifteen hundred dollars actually paid by him in satisfaction of the bond, and to the *pro rata.* part of the mesne profits in proportion to the period of their occupation of the land?

The first question is, I think, settled by the rule of the common law, declared by the Act of Assembly of this State. This rule I take to be " the measure of value is that of the land at the time of the warranty made," with interest from that date.—Rawls on Con. for Titles, p. 233, and note 3 for authorities; Rev. Stats., 562, § 18; *Earle* vs. *Middleton,* Chev., 130.

The difficulty presented in this case is that the action is not brought against the immediate alienor to the plaintiffs, but against an antecedent covenanter, the benefit of whose covenant is vested in the plaintiffs. The plaintiffs' alienor made no covenants, but transferred to them with the land the covenants which they received with it, so that the plaintiffs acquire all the benefits of the covenants of Caldwell to Pearse. Any other doctrine, it appears to me, would lead to most inequitable, if not absurd, conclusions. If the plaintiffs in their action against Caldwell are limited to the price paid by them to Pearse, then it follows that Caldwell, who sold with warranty land which did not belong to him and from which the purchaser has been ejected by paramount title, retains the possession of one thousand dollars and interest of money which he had no right to receive; in other words, he retains a part of the price of his illegal and wrongful conveyance. Pearse cannot recover it from him, for he has sold without warranty and has transferred to the plaintiffs all the benefit of the covenants of Caldwell to him. But it may be said that, although Caldwell would be liable to Pearse, if he were the plaintiff, for the larger sum, still he is not responsible to the plaintiffs, because they purchased from Pearse for a smaller sum. This view, I think, proceeds upon a misconception of the meaning of the word "damages" as applied to the subject. It is not, in fact, damages, but compensation,—in the language of the ancient law, " recompense,"—which is demanded. The great object of the rule of law was uniformity and to avoid the confusion and perplexity which would arise from a consideration in each case of the ever-varying value of the land at different times. Hence the

rule stamps upon the land its value at the time of each alienation in so far as that alienor is concerned, and the price paid to him is the measure of his covenant in an action brought against him. Any other view would, as already said, be most inequitable. Suppose a voluntary conveyance by the first or any subsequent alienee and ejectment of the tenant to whom the land was given,—could the first covenanter in an action against him say: You have sustained no damage and are entitled to no redress? I think not. The plaintiff has lost his *land*, not his purchase money, and he is entitled to recover what the covenanter received and what by his covenant he agreed to pay in case of eviction by paramount title. By this interpretation of the rule the covenanter suffers no wrong—he pays only what he agreed or covenanted to pay, and satisfaction to the person evicted is satisfaction to all who preceded him in the chain of covenants.

The second question is somewhat embarrassing. Although I do not perceive the propriety of the assumption by the defendant to settle the debt of the plaintiffs without their concurrence, or to purchase their claims at a time when he was a party to a suit in which those claims were in course of adjustment, or rather in which the amount of his liability was involved, yet I cannot regard him in the light of a mere voluntary payer of the debt of another. He paid to another that which he owed to the plaintiffs, but which the plaintiffs must have paid to the same persons if they had received it from the defendant. I cannot resist the conclusion that it would be inequitable to repudiate the payment by the defendant when that payment has been in relief of the plaintiffs. In regard to the payment on the bond, I with much hesitation allow more than the fifteen hundred dollars actually paid; but inasmuch as I have allowed the full amount of the covenant to the plaintiffs, and inasmuch as the payment has discharged the plaintiffs from their liability on a bond which they must otherwise have paid in full, unless, indeed, they could have made for themselves as good a bargain as the defendant has made for himself, I shall allow the offset to the full extent of the plaintiffs' liability at the date of the satisfaction of the bond by the defendant.

In regard to the payment of mesne profits: Interest was due by the defendant on the covenant from its date, and the plaintiffs were liable to the owners of the land for the mesne profits from the date of their entry on the land. The defendant has discharged by the

payment of one thousand dollars the mesne profits running through a period vastly longer than that of the occupation of the land by the plaintiffs, and that without the concurrence of the plaintiffs and without reference, so far as appears, to the value of the mesne profits at the several periods. No evidence was adduced to show the condition of the property or the value of the mesne profits at the respective periods, but it is matter of history that Richardson street was a well built street in the city of Columbia in 1851, and that not a vestige of a building was left standing upon it after the fire of 1865, since which period the occupation by the plaintiffs commenced, so that, in the absence of proof, it would be impossible to fix and apportion the share of mesne profits, if any, for which the plaintiffs would be liable. I shall, therefore, set off the payment of mesne profits against the interest accruing anterior to the purchase by the plaintiffs. The defendant has paid a sum in gross for mesne profits, and has not shown what mesne profits were chargeable to the plaintiffs. I do not think, therefore, that his payment can be set off against the interest since the purchase by the plaintiffs. The plaintiffs are further entitled to the costs paid by them, to wit, six hundred 44-100 dollars, with interest from July 3, 1873, the day of payment by them.

Setting off, therefore, the $1,000 paid for mesne profits against the interest for the covenant from March 24, 1851, to August 27, 1869, the date of the purchase by the plaintiffs, the account will stand thus:

| | | |
|---|---:|---:|
| Principal debt | $5,000 | 00 |
| Interest from August 27, 1869, to March 11, 1876 | 2,289 | 58 |
| | $7,289 | 58 |
| Then paid by satisfaction of bond | 3,840 | 00 |
| | $3,449 | 58 |
| Interest from March 11, 1876, to March 13, 1877 | 242 | 79 |
| | $3,692 | 37 |
| Costs paid by plaintiff | 600 | 44 |
| Interest from July 3, 1873, to March 13, 1877 | 155 | 27 |
| | $4,448 | 08 |

It is, therefore, adjudged that the defendant, Thomas J. Robertson, as executor of the last will and testament of John Caldwell,

deceased, do pay to the plaintiffs the sum of four thousand four hundred and forty-eight and 8-100 dollars, together with the costs and disbursements of the action.

The plaintiffs excepted to the report as follows:

1. To so much thereof as overrules the objection of the plaintiffs to the evidence offered by defendant and admits the same.

2. To so much thereof as allows offsets to the defendant and the amounts allowed as such offsets.

Defendant's exceptions:

I. For that the said Referee made the five thousand dollars the amount of the purchase money paid in.1851, by Samuel Pearse, the basis of his calculations, instead of the four thousand dollars, the amount of the purchase money agreed to be paid by the plaintiffs at the sale made in 1869 to them.

II. For that the said Referee allowed to the plaintiffs more than the amounts of their payments on the bond given by them for the purchase money, with interest on such payments from their dates, in addition to their costs incurred in defense of their title and interest thereon.

III. For that the said Referee allowed, in addition to the costs incurred by the plaintiffs in defending their title and interest thereon, more than the amounts of their payments on the bond given by them for the purchase money.

IV. For that the said Referee allowed, in addition to the costs incurred by the plaintiffs in defending their title and interest thereon, more than the excess of the payments by the plaintiffs on the bond given by them for the purchase money, in each year, over the amount of a year's interest on that bond, (whenever in any year there was such excess,) with interest on such excess.

V. For that the said Referee allowed the plaintiffs a greater amount of damages than they actually incurred or were in equity or justice entitled to.

KERSHAW, J. The exceptions to the report of the Referee make the following questions:

1. What is the measure of defendant's liability and plaintiffs' recovery in this action?

2. What offsets shall be allowed defendant against such liability?

In determining these questions, I have availed myself of the able and learned arguments of the counsel on both sides, but do not find it necessary in this judgment to follow their exhaustive researches into the law of warranty, pronounced by Lord Coke to be "one of the most curious and cunning learnings of the law." I shall confine myself to the consideration of so much of the law and the learning accessible to me as will enable me to ascertain the true meaning of the Act of 1824 fixing the rule of damages in cases like this and the consequences that flow from it. "At common law, upon voucher or upon a writ of *warrantia chartœ*, the demandant recovered of the warrantor or heir other lands of equal value with the lands from which the feoffer was evicted, the value of which was computed as it existed when the warranty was made," without reference to any increased value it might have attained at the time of eviction; and when personal covenants were introduced as a substitute for that ancient remedy, "the established measure of compensation was not varied or affected; the buyer on the covenant of seizin recovers back the consideration money and interest and no more."—4 Kent, 474.

"In most of the States the measure of damages on a total failure of title, *even on a covenant of warranty*, is the value of the land at the execution of the deed, and the evidence of that value is the consideration money, with interest and costs."—*Ibid*, 476.

In thus laying down the rule of damages the learned Chancellor followed his own able opinion in the case of *Staats* vs. *Ten Eyck*, (3 Caine's Cases, 111,) a leading authority cited approvingly by the Judges of this State in the cases hereafter to be cited.

The same rule of the common law is declared by Mr. Washburn, in his treatise on the law of Real Property, thus: "In some of the States the covenant of warranty is assumed to take the place of the ancient warranty of the feudal law. * * * As the thing recovered is money instead of land, the same idea is carried out by giving to the party who has lost his land *the money he paid for it* and interest, so as to restore him to his original condition in that respect."—3 Wash. Real Prop., 422, § 41.

"In other States," he adds, "this covenant is regarded as one of indemnity, and the rule of damages is to restore to the covenantee what he shall have lost by the failure of the other party to keep his covenants, and, therefore, the measure of damages is the value of the premises at the time of eviction."—*Ibid.*

This was acknowledged to be a departure from the common law in order to approximate the rule of the civil law, which, in the language of Chancellor Kent, "has the appearance of refined justice," and allowed a recovery of the increased value of the premises, arising from the general appreciation of property or from any other causes.

This departure from the common law was participated in by the Courts of this State in their infancy.—*Liber* vs. *Parsons*, 1 Bay, 18; *Eveleigh* vs. *Stitt*, 1 Bay, 92; *Guerard* vs. *Rivers*, 1 Bay, 265; *Witherspoon* vs. *Anderson*, 3 DeS., 245.

But Judge Brevard, in the case of *Furman* vs. *Elmore*, (2 Nott & McC., 189,) in an elaborate opinion, reviewed the decisions in these cases and demonstrated that the common law rule was obligatory upon the Courts of South Carolina. He concludes "that the only legal standard of damages or compensation in a case like the present is that rule which was established in England at the time when the common law of that country was adopted in this, and that it has always remained the same." He states that rule in these words: "The value of the subject of the sale, at the time of the contract of sale, or the price or consideration paid, and interest thereon from that time, together with the costs of eviction when the purchaser has been legally evicted." In support of this rule, as there laid down, the learned Judge cites many authorities, English and American, and among them the case of *Staats* vs. *Ten Eyck*.

This decision was in conflict with all the previous cases here on this subject, but was followed and affirmed by the cases of *Henning* vs. *Withers*, (3 Brev., 458,) and *Ware* vs. *Weatherall*, (2 McC., 413,) decided in 1823, and *Bond* vs. *Quattlebaum*, (1 McC., 586,) decided in 1822. In these cases the rule was still made the subject of discussion, and Judge Brevard himself, in the opinion in *Furman* vs. *Elmore*, suggested action by the Legislature to settle the law.

Accordingly, in 1824, the General Assembly did enact a law which it was supposed would determine the rule so plainly that it could not thereafter be misunderstood. That law as transcribed into the Revised Statutes, without alteration of the sense, is in these words: "In any action or suit for reimbursement or damage, upon covenant or otherwise, the true measure of damages shall be the amount of the purchase money at the time of alienation, with legal interest."

It is said by Judge O'Neall, in *Earle* vs. *Middleton,* affirming the rule as laid down in *Furman* vs. *Elmore* and the other cases decided at law, that the Act was in affirmance of the law as laid down in those cases, which had settled the rule long before it was enacted.— See case, Chev., 130.

The question really is, what alienation is to be referred to as fixing the " amount of purchase money," which is the " true measure of damages."

When the question arises between the last grantee and his immediate grantor, no doubt can ever arise. In that case it must be the purchase money paid by the plaintiff when the land was alienated from his grantor to him. But here there is an intervening grant between the deed of the defendant's testator, upon which the action is brought, and the purchase by the plaintiffs. The testator, Caldwell, conveyed to Pearse with warranty, and Miller, as the officer of the Court, conveyed Pearse's title without warranty to plaintiffs. The purchase money in the former alienation was *five* thousand dollars, and in the latter *four* thousand dollars. Which sum is to be the measure of damages ?

As has been said, the State merely affirmed the common law rule, and the question, therefore, is resolved into the inquiry, what is the common law rule as applicable to this case ?

Although the rule is arbitrary which adopts the purchase money at the time of alienation as the measure of the recovery, the principle upon which it proceeds is that of *compensation* for the loss sustained by the party evicted.—Sedg. Meas. Dam., 174.

At common law, as we have seen, the feoffer recovered of the lord under whom he held other lands of the value of that he lost, whenever evicted, that value to be recovered " as the land was when the warranty was made." That is to say, upon his investiture with the feud.

For investiture we have now substituted the usual form of conveyance of real estate, and for lands of equal value we have the consideration paid, which is made the value of the land at the time of alienation ; and as in the case of the ancient feudal warranty the feoffer had his voucher or writ of *warrantia chartœ,* whereby he recovered land of equal value from his immediate lord, so now the purchaser has his remedy upon all his covenants to recover the value of the land, for which the *price* is made the standard, as it was when it came to him at the last alienation. All the covenan-

tors are bound to make good to him this value, which, once satisfied, all claims of the grantee on the covenants is discharged; but no covenantor is compelled to pay a greater amount than the consideration paid to him at the time of his warranty or the value of the land at that time, with interest and costs, because he is held to have contracted with reference to that value, and the question is one of intention.— *Ware* vs. *Weatherall*, 2 McC., 415.

"Measure of damages" is the limit to which the law allows the party to recover, (3·Wash. Real Prop., 423,) and for this purpose the price paid at each alienation is the limit of the recovery against that particular alienor; but the last grantee is held to be fully compensated when he shall have recovered the price or value of the land at the time of the last alienation, though it may be far short of the *limit* of some anterior grantor's liability.

Such are the conclusions to which I have been led upon this question, after a careful consideration of the cases and authorities. No case has been found, and none has been cited by the counsel, presenting distinctly this point. The question seems never to have been raised in this State, all the cases appearing to have been against the immediate grantors of the plaintiffs. I think, however, the position is not without authority. I find a case to this effect: A held a paramount title to land; he recovered it in an action against B, the grantee of C. A then sold the land to B for a specified sum, and took in payment an assignment of B's right of action against C on the covenants of his deed to B.

This assignment was held equivalent to the payment by B of the specified sum to A. And the measure of the damages of A, as assignee, in his action against C on the covenants, was the same that B's would have been, namely, the consideration named in C's deed to B and interest, *subject to the limitation* that the assignee, A, could recover no more than the consideration or price, the specified sum agreed between him and B, with, perhaps, the costs of the ejectment suit paid by B added.—*Eaton* vs. *Lyman*, 24 Wis., 438; 26 Wis., 629, stated in note to Sedgwick Meas. Dam., 6th ed., p. 224.

There the measure of damages was the price of the land at the time of the alienation to the evicted purchaser; but the recovery was limited to the amount paid by him to secure the title, upon the principle of compensation for the loss sustained, which, in the eye of the law, is the money value of the land at the time it was con-

veyed, or so much thereof as the party may have lost by reason of the failure of title.

In like manner it is said to be well settled in New Hampshire, that in a suit brought on a covenant of warranty, where the grantee has purchased in the paramount title, he can receive no more than the amount paid, with compensation for his trouble and expenses.—Sedgwick Measure of Damages, 195.

It would follow from this principle, that if any one of several successive warrantors should satisfy the claim of the last grantee, which would be done by paying him the purchase money, with interest and costs, such warrantor could recover no more from the previous warrantors than it had cost him to satisfy the last grantee; which is as much as to say that the measure of damages is the value or price of the land at the time of the last alienation.— 3 Wash. Real Prop., 402.

Any one in the line of warrantors would have the right to redeem, and it could not cost one more than another, and the last grantee would be satisfied by the refunding of the money paid by him, or the value of the land at the time of alienation to him, no matter from whom it came, of all the covenantors. The engagement of the first covenantor is only "to indemnify all subsequent covenantors from all damages arising from the breach of the covenants."—*Borth* vs. *Starr*, 1 Conn., 244; Rawle on Cov., 340, in note. Hence, he could only be liable to make good the warranty of the last alienor.

In Rawle on Covenants, (p. 335,) it is said: "A covenantee may sue simultaneously each and all of his previous successive covenantors and recover several judgments against each of them, * * * although, of course, he can have but one satisfaction; and the payment by any covenantor of a judgment thus recovered against him by a subsequent covenantor, who has himself paid a judgment also recovered against him, and for a larger amount, is a satisfaction of his liability." In a note he refers to the case of *Wilson* vs. *Taylor*, 9 Ohio, 595.

In that case Taylor conveyed land to Wilson, who conveyed to Legget, who conveyed to Weiss, all with covenants of general warranty. The latter, being evicted of part of the land, recovered judgment against Legget for $414, against Wilson for $284.43, and against Taylor for $280.23. Taylor paid the judgment of $280.23, and Wilson also paid the judgment of $284.43, and then sued Tay-

lor, who pleaded the recovery and payment in bar, and the plea was held good. As the remarks of the Judge who delivered the opinion in the case elucidate the principles here discussed, they are transcribed as follows: " Weiss, the last covenantor, and who suffered damage by reason of partial eviction, was entitled to his several actions against all the prior covenantors. Not only was his right of action perfect against all, but *the same rule of damages would apply* as to all; and although he could have but one satisfaction, yet he was entitled to recover the full amount of damages against each. If he failed to make the proper showing to recover the full amount of his damages against each, it was his own fault ; and, having collected and received the amount recovered against the first covenantor, who occupied the position in law of a guarantor of all the subsequent grantees, it seems to us that Weiss's claim under all the covenants must be held satisfied, and that all enforcements of the judgments against the other intermediate covenantors was wrongful and in violation of the principle that he should have but one satisfaction. Taylor ought not to be subjected to different actions and liable to several recoveries for the same breach of the same covenant."

If the construction of the law contended for by the plaintiffs in this case prevailed, it would follow that in case of several successive covenants of warranty upon as many successive alienations at different prices there would be as many different measures of damages, though the loss of the evicted covenanter to be compensated would be but one and the same in each and every case. An incongruity so manifest as this cannot be sustained. I conclude, therefore, that the measure of damages of the plaintiffs in this case—the limit of their recovery—is the price or consideration contracted to be paid by them for the land in question upon their purchase from Miller, with legal interest from the time of their purchase, and the cost of the ejectment suit whereby they were evicted.

2. As to the offsets to be allowed defendant against this recovery, I agree with the Referee that defendant is entitled to the benefit of so much of the plaintiffs' bond to Miller as was extinguished by him, and (all technical objections to the time and mode of pleading the same having been waived at the hearing) that he is entitled to a set-off to the full amount canceled by his payment. There was such a privity in relation to the subject matter of the debt as to authorize the interference of defendant in order to protect the es-

tate of his testator, and it cannot be treated as a voluntary payment.

I also agree with the Referee in his conclusion that the sum of one thousand dollars paid by defendant in extinguishment of the claim for mesne profits cannot be brought in here and set up against the recovery of plaintiffs. Plaintiffs were ejected by action May 12, 1873, and this payment was made by defendant after the eviction, to wit, March 2, 1876. The action for recovery of real property, by the Code of Procedure, (Section 190) may be joined with the claim for damages and rents and profits as in the action of trespass formerly prevailing here as a substitute for ejectment; accordingly we find that it is usual to frame the action now with that aspect (1 Abbott's Forms, § 23, p. 513,) and to pray judgment for damages or mesne profits or both. It is, so far as I am aware, the universal practice here to include such claim in actions for the recovery of real estate under the Code. I assume, therefore, that the action under which plaintiffs were ejected was so framed. In that case the recovery by the owners of the fee in that action concluded any further claim against these plaintiffs for rents and profits.—*Sumter* vs. *Lehre*, 1 Tr. Con. Rep., 102; *Coleman* vs. *Parish*, 1 McC., 164. There was, therefore, nothing due by them at the time of such payment by defendant, and plaintiffs cannot be charged therefor. It must be treated as having been paid on account of his testator's liability or that of Pearse for mesne profits.

The report furnishes the means of ascertaining the amount for which judgment should go for the plaintiffs without the necessity of recommitting, and I will proceed to state the same according to the principles of this decision.

Amount of purchase money of the land, Aug. 27, 1869...$4,000 00
Interest to March 11, 1876..................................... 1,830 87

                                                            $5,830 87
Then paid satisfaction of bond................................. 3,840 00

                                                            $1,990 87
Interest to Aug. 11, 1877........................................ 197 42
Costs in ejectment suit.......................................... 600 44
Interest from July 3, 1873, to Aug. 11, 1877........... .... 186 33

    Balance due plaintiffs.................................. ...$2,975 06

It is, therefore, adjudged that the defendant, Thomas J. Robertson, as executor of the last will and testament of John Caldwell, deceased, do pay to the plaintiffs the sum of two thousand nine hundred and seventy-five dollars and six cents, together with the costs and disbursements of this action.

The exceptions of the plaintiffs are overruled. The fourth exception of the defendant is overruled; the other exceptions of the defendant are sustained. The report is reversed so far as it conflicts with this judgment and is confirmed in all other respects.

Both sides appealed.

*Bachman & Youmans,* for plaintiffs:

1. Plaintiffs submit that the whole matter is settled by statute, A. A., 1824, 65 to 238; Cousart, 5, § 3, A. A., 1869; 14 Stat., 209, § 6, initial paragraph of the Code of Procedure; A. A., 1870, 14 Stat., 423; and that the alienation there referred to is the alienation which contains the covenant of warranty by the warrantor or his representative, who is sued thereon for its breach, either by his direct grantee or some subsequent assignee, and that interest accrues from this alienation. This, we contend, is the obvious and apparent meaning of the enactment, founded in equity, that the warrantor of land who has not title to it shall pay back the amount received, with interest from its receipt, and supported by all the decisions of the State since its enactment.—2 N. & McC., 186, 199, 202, 497; 2 Tread., 584; 3 Brev., 458; 1 McC., 467; 1 McC., 586; 2 McC., 413; Cheves, 130; 1 McM., 38; 1 N. & McC., 104; 13 Rich. Eq., 238; *Jeter* vs. *Glenn,* 9 Rich., 374; 5 Co., 16; Rawle on Covenants for Title, 4th ed., 318 to 324; 2 Rob. Pr., 73 to 103; 1 N. & McC., 184; Sedgwick on Damages, 39, note 3. If the opposite construction, that alienation in the Act refers to the alienation *to* the party bringing the action on the warranty, and not to the alienation *by* the warrantor, then the heir-at-law, the devisee and the grantee for natural love and affection of the grantee of the warrantor can recover nothing from the warrantor. *Reductio ad absurdum.*

We are aware of no such principle of law prevailing in paper, commercial or uncommercial, sealed or unsealed, or in any of the obligations which men assume, the right to recover on which can be transferred.

2. The plaintiffs, as to the defense arising from the payment of the $1,000, rely on what is said in the circuit decree.

3. The plaintiffs insist that there was no such privity in relation to the subject matter of this or of plaintiffs' bond to the Clerk, Miller, as to authorize the interference of defendant, and submit that it was a voluntary payment, and, therefore, plaintiffs are not liable.— 2 Rob. Pr., 434; 8 T. R., 310, 613; 1 Tread., 473; 3 Strob., 532; 8 Taunt., 268; 4 E. C. L., 140; 33 Man., Gr. & Scott, 54; 68 E. C. L., 206; 9 Rich., 515.

4. Even if defendant is entitled to the benefit of this payment, he can be entitled to the benefit of it against plaintiffs only to the amount actually paid by him, $1,500, and not $3,840. This is all he would be entitled to if he stood in such privity as that of plaintiffs' surety.— *Wynne* vs. *Brooke,* 5 Rawle, 109; *Bonney* vs. *Seeley,* 2 Wend., 482; 2 Rob. Pr., 449. The bond was satisfied, not assigned.

*Rion,* for defendant:

I. We distinctly admit that Caldwell's warranty runs with the land, and that we occupy exactly the same position as if, on the 27th August, 1869, Caldwell had conveyed the premises to the plaintiffs for $4,000 and given them full covenant of warranty.

We claim that Caldwell is to be held to the same responsibility that Pearse would have had to meet, had he (as the Clerk did for his distributees) on 27th August, 1869, conveyed the premises to the plaintiffs for $4,000 and with warranty.

The plaintiffs claim that Caldwell's responsibility is the same as if he had conveyed to them on the 24th March, 1851, for $5,000.

The position of the plaintiffs amounts to this : that the damages which they are entitled to recover is not what is sufficient to compensate them for all the loss *they have sustained,* but the loss *Pearse would have sustained* had he never sold the premises.

This is against the theory of the law, which always looks to the loss which the plaintiff has sustained, and not what the defendant might have been made to pay *other* plaintiffs.

II. The proposition of the plaintiffs and its results are against right reason. According to it, had Caldwell sold Pearse a lot with a fine brick building upon it for $5,000 in 1851, in the burning of Columbia, February, 1865, that building been burnt, after which Pearse had removed and sold $900 worth of brick from the old walls, and then in 1869 sold the vacant lot to the plaintiffs for $4,000, it would then follow that the plaintiffs could recover the

same amount as if Pearse had remained in possession, the building been unhurt, and he, Pearse, sold off none of the bricks. My picture is, however, true to nature, and the facts are as pictured. But the burning of the building and the sale of the brick were matters not relevant to plaintiffs' case, and their proof would promptly have been met by an objection by their attorneys that they were inadmissible as having nothing to do with the property after plaintiffs bought it in 1869, all having transpired prior to such purchase.

Our proposition is, that the plaintiffs are to have the benefit of Caldwell's warranty, but it is to be applied to the property bought by plaintiffs at the time they purchased, and at the value it then had as measured by the price they gave.

We have acted on this and hedged the plaintiffs around by paying off every one who could have a claim on them, then offered them to pay back every cent they have paid out, all their costs and damages, with interest on the whole. · The plaintiffs are, however, not satisfied with this, (although the result is that they for years occupied the premises for nothing,) but claim the benefit of a price which they never gave, from a time when they never bought, and for property that had in part ceased to exist before they purchased.

III. The plaintiffs say: But suppose Caldwell's warranty to Pearse had been for only $3,000, then they could have received only the $3,000, although they had paid $4,000; .hence, the value at the time of warranty should govern as well when it is greater as when it is less than the price given by a subsequent purchaser. This reasoning is not sound. The plaintiffs are entitled to recover the amount which they have been damnified by property being sold to them, the title of which was defective; their right is ordinarily to recover this from the one who sold to them. But in this case, that one did not warrant. Then the equitable rule of law allows them to have the benefit of any warranty made to the one who sold them the land. Now, if that warranty is sufficient to cover the value of the land when plaintiffs purchased it, (as in this case,) then plaintiffs can recover to the extent of that value; but if, as in the supposed case, (of Caldwell having only warranty for $3,000,) that warranty is not sufficient in amount, then that is plaintiffs' misfortune, just as when one has property burnt that is not fully insured.

Again, the plaintiffs want interest on the value of the land, not from the date of their purchase, but from the date of Pearse's purchase. That is, they want what the law provides as an equivalent

for rent, for the years that transpired before they had the least interest in, or claim to, the land. If Pearse had purchased when very young, and lived to a good old age, the plaintiffs might have set up a claim for many years' rent that accrued before they were born.

IV. In order, as far as practicable, to provide for a measure of damages in a case like the present, our Legislature provided (7 Stat., 238,) that "the true measure of damages shall be the amount of the *purchase* money at the *time of the alienation*, with legal interest." The plaintiffs read this: "The true measure of damages shall be the amount of the *sale* money at the *time of warranty*, with legal interest, without regard to the amount of the purchase money given by, or the time of the alienation to, the party who is entitled to, and brings the action for, breach of warranty." They would make the Legislature to have provided a measure of damages not dependent upon the rights or wrongs of the one complaining at the time when injured, but upon the responsibility that the defendant may have assumed respecting other persons, at another time, and for a consideration different in amount from what the plaintiffs ever had any concern in.

V. What damages have the plaintiffs sustained, applying the "true measure" provided by our statute?

They have paid a certain amount of the purchase money, and we have paid all the balance for them. Now, are they to recover more than what they have paid or ever can pay? If so, when the statute said *measure* of damages, it meant *amount* of damages. A yard stick may be a measure of cloth agreed on, yet the parties may buy and sell a half yard, or more or less. Nothing should be measured but what there is to measure. Suppose, in addition to all we have done, we had also paid the parties who held the paramount title for that title also,—would this not have left the plaintiffs with no damages to measure, except their costs in defending the action against the McGowans? Caldwell's contract was to warrant and defend, and is he not entitled to a full credit to the extent he does protect the plaintiffs from loss? and ought the measure to be applied not only to the damage which the plaintiffs have sustained, but likewise to such damage as the defendant has, in carrying out his contract of warranty, interposed and prevented them from sustaining?

VI. What interest are the plaintiffs entitled to? Applying the statute *mutatis mutandis,* they are entitled to interest on all of the

purchase money which they have paid, and can be made to pay, from the time of payment, and from the time what they can be made to pay will draw interest. But we have saved them harmless from all except what they have already paid; hence, that alone can draw interest, and from dates of payments. The Court will observe that many of the payments were of interest, and hence the same result is reached by allowing them with interest from date of payment, or by rebating interest and reducing all to value at time of alienation, and then calculating interest on such amount from date of alienation up to the present time.

This mode of computation makes the amount due the plaintiffs on the 11th of August, 1877, $1,999.76 instead of $2,975.06, as estimated by His Honor the Circuit Judge.

VII. The error of His Honor is in applying the measure to what did not exist to be measured. For instance, suppose the plaintiffs had paid only one-half of the purchase money, and left exactly one-half with *interest* thereon due, and the defendant, in carrying out his testator's contract to defend, had paid off this balance of $2,000 due on the bond, together with the *interest* due on this $2,000. In such case, ought the $2,000 of the purchase money we have paid to be *measured*, or ought the *interest* on that much to be measured? These are items of what damage the plaintiffs have *not sustained*. When His Honor allows the interest to be computed on the whole $4,000 instead of what the plaintiffs actually paid, he is applying the measure both to the damage the plaintiffs have sustained and what we have saved them from sustaining.

Had we paid off all the interest as well as all the rents and profits claimed by the McGowan children, the plaintiffs would, as a necessary logical result, be entitled to no interest on any sum. In *Bond* vs. *Quattlebaum,* (1 McC, 586,) Judge Nott, in delivering the opinion of the Court, says: "There may, perhaps, be cases where the rents and profits, in the meantime, will take away the claim of the party to interest. In *Earle* vs. *Middleton,* (Cheves, 129,) Judge O'Neall, with his usual boldness, says of this: "There is no case of eviction, actually or constructively, *by paramount title,* where the party's right to interest would be defeated by the reception of the rents and profits. The defect reaches back to the beginning of his title, and the rents and profits which he has received are not those of his vendor but those of a third person having the paramount title. The damages recovered in a case of actual eviction,

or which may be recovered by an existing paramount title outstanding, are in the place of rents and profits and represent them in legal contemplation." But His Honor never could have contemplated a case like ours, while Judge Nott had some such case in his mind. These rents and profits, which are represented by the damages recovered by way of interest, and which belong to that third person having the paramount title, *have been paid for* by us, and we hold a receipt therefor! It would be a gross travesty of law for the plaintiffs to have enjoyed the rents and profits, we paying those to whom of right they belonged, and repaying the plaintiffs all possible expenses attending their enjoyment of these rents and profits, and then for us to be compelled to pay the plaintiffs the value of these rents and profits which they have enjoyed at our expense.

February 13, 1878.   The opinion of the Court was delivered by

McIver, A. J.   On the 24th of March, 1851, John Caldwell, the defendant's testator, in consideration of five thousand dollars paid to him by one Samuel Pearse, conveyed to said Pearse a certain lot of land in the city of Columbia, with full covenants of warranty. On the 27th of August, 1869, Miller, as the Clerk of the Court of Common Pleas, under an order passed in proper proceedings for the settlement of the estate of Samuel Pearse, in the Court of Equity and Court of Common Pleas, conveyed, without warranty, the same lot to the plaintiffs for the consideration of four thousand dollars. On the 12th of May, 1873, Olivia R. McGowan and others recovered by title paramount this lot from the plaintiffs in an action of which the defendant was duly notified. This action is now brought on Caldwell's warranty, and the plaintiffs claim that the true measure of damages is the amount of the purchase money paid to Caldwell, with interest thereon from the date of his alienation, together with the costs of the action of ejectment brought by the McGowans.

The defendant, on the other hand, contends that the measure of damage is the amount of the purchase money contracted to be paid by the plaintiffs, with interest from the date of the alienation to them, together with the costs of the action of ejectment. The defendant also claims that he has liquidated the damages to which the plaintiffs were entitled to a partial extent, and, therefore, that they are only entitled to recover the balance, in support of which

they produce a receipt to the defendant, dated 2d of March, 1876, signed by the attorneys of the McGowans, for " one thousand dollars, in full of all claims for mesne profits, rents and damages of every kind against the said John Caldwell, deceased, and all others claiming title immediately and subsequently, directly and indirectly, as his grantees and as grantees in succession of his grantees," of the premises in question, and the bond to Miller as Clerk, which, after sundry credits, bears the following endorsement:

"$1,500. This bond is this day satisfied in full by the payment of fifteen hundred dollars by T. J. Robertson, executor John Caldwell, who was the grantor and warrantor to Samuel Pearse of the land which was the consideration of this bond, the same being so received in accordance with the order of Court of date March 10th, 1876.

"W. S. MONTEITH,

"Attorney for D. B. Miller, Clerk, and Solicitor of Estate.
"MARCH 11th, 1876."

Both parties appeal from the judgment of the Circuit Court on grounds which are distinctly set out in the " case " as presented here, to which reference must be had for a detailed statement of the facts and of the grounds upon which each of the parties appeal. The questions raised by the appeal are: First. What is the measure of the defendant's liability? Second. Whether any offsets or payments are to be allowed defendant; and if so, how much ?

As to the first question, it may be stated in a more precise form, thus: Is the defendant liable for the amount of the purchase money ($5,000) mentioned in the deed from Caldwell to Pearse, or is he liable only for the amount of the purchase money ($4,000) mentioned in the deed from Miller, Clerk, to the plaintiff? It is conceded, and very properly conceded, that Caldwell's warranty runs with the land, and, therefore, that his estate is liable to respond in damages to the plaintiffs, who have been ejected by paramount title, and the only question is as to the measure of those damages.

The question as to what should be the proper measures of damages in an action like this is one which has troubled the Courts of this State from the commencement of our judicial history down to the time when the Legislature took the matter in hand and passed an Act which it was supposed, vainly as the event has proved, would finally settle the controversy. In the earlier cases our Courts

seemed disposed, in analogy to the civil law rule, to adopt the value of the land at the time of the eviction as the measure of the damages.—*Liber* vs. *Parsons*, 1 Bay, 19; *Eveleigh* vs. *Stitt*, 1 Bay, 92; *Guerard* vs. *Rivers*, 1 Bay, 265; *Witherspoon* vs. *Anderson*, 3 DeS., 245. Subsequently, however, in the case of *Furman* vs. *Elmore*, (2 N. & McC., 189,) the common law rule that the purchase money and interest was the true measure of damages was adopted; and although this case seems to have been followed in a number of subsequent cases cited in the argument of this case, yet the question continued to be the subject of discussion until the passage of the Act of 1824, (6 Stat., 238,) incorporated in the General Statutes, Chapter CXXI, Section 18, page 562, in the following words, which are practically identical with those used in the original statute : "In any action or suit for reimbursement or damage upon covenant or otherwise, the true measure of damages shall be the amount of the purchase money at the time of the alienation, with legal interest." So that the precise question in this case is, what alienation is referred to ?—the alienation by Caldwell to Pearse or the alienation by Miller (practically Pearse) to the plaintiffs ? We are not aware of any case in which this question has been decided ; and inasmuch as no such case has been cited in the very elaborate and able argument made in this case, it will be safe to assume that no such case can be found. The case from Ohio and Wisconsin and the New Hampshire cases, cited by the Circuit Judge, are, as he says, not directly in point; and if they were, they could scarcely be authority upon the construction of our Act of 1824, for, after all, the question turns upon the proper construction of the terms of that Act. We are left, therefore, to determine this question without out the aid of any direct authority.

When we recollect that this is an action upon a contract, and that it is upon the contract of Caldwell and not that of Miller, it would seem necessarily to follow that we must look alone to Caldwell's contract for all its terms, and hence that the measure of damages would be the amount mentioned in Caldwell's deed and not the amount mentioned in Miller's deed. It is difficult for us to understand how, in searching for the measure of Caldwell's liability, we can go outside of the contract which he has made. Again, we presume there could be no doubt but that if Pearse had been the party evicted and had brought this action against Caldwell, that the measure of damages would have been the amount of the purchase

money mentioned in Caldwell's deed, with interest from the date of that deed. Now, by what right alone do these plaintiffs bring this action? Certainly as the assignees of Pearse, for, though the deed was not made to them directly by Pearse, yet Miller, as Clerk, under the order of the Court, conveyed to the plaintiffs all the right, title, interest and estate of Pearse, and this invested them with all the rights of Pearse, including the right of action on Caldwell's covenant, upon its breach, as fully and completely as if Pearse himself had conveyed directly to the. plaintiffs. This was distinctly decided in the case of *McCardy* ads. *Brisbane* (1 N. & McC., 104,) as to a purchaser at Sheriff's sale, and the doctrine has been repeatedly recognized since, down to the case of *McKnight* vs. *Gordon*, (13 Rich. Eq., 222); and if this be true as to purchasers at an involuntary sale made by the Sheriff under execution, how much more true it would be as to a purchaser at a sale made by the proper officer, under an order of the Court for partition or some other purpose necessary to the settlement of an estate, where all the parties in interest are before the Court. The plaintiffs, therefore, were invested with all the rights which Pearse had ; and if he could have recovered the sum of five thousand dollars, with interest from the date of Caldwell's deed, we see no reason why the plaintiffs, who stand in his shoes and are entitled to his rights, cannot do the same thing. Suppose the condition of things were reversed, and that the amount of the purchase money mentioned in Caldwell's deed had been one thousand dollars and the amount mentioned in Miller's deed had been two thousand dollars, would any one for a moment pretend that Caldwell could be made liable for the larger sum? Why not? Simply because it is outside of and beyond the terms of his contract. It seems to us that this is absolutely conclusive; for the question being *what alienation* is referred to in the statute, the moment it is admitted that under a reversed state of facts the plaintiffs could not recover the full amount of the purchase money *which they paid*, it necessarily follows that the construction contended for by the defendant, that the alienation referred to in the Act is the alienation *to* the person who brings the action, will, under some circumstances, not at all unlikely to happen, be in conflict with the terms of the Act, and cannot, therefore, be the proper construction. If, as the defendant contends, the words "amount of the purchase money at the time of alienation" refer to the purchase money paid by the plaintiffs *when*

*they bought,* then, in the case supposed, the result necessarily would be that the plaintiffs would be entitled to recover two thousand dollars ; for that, according to the supposition, is the amount of the purchase money *which they paid* at the time of the alienation *to* them, whereas the defendant is obliged to concede that this could not be done, and hence it follows that this cannot be the proper construction of the terms of the Act. But if the construction contended for by the plaintiffs, which we think is the proper one, be adopted, then we have exactly what the Act was designed to furnish—a fixed and invariable standard, applicable alike to all possible cases ; for under the civil law rule the measure of the covenantor's liability was of an altogether uncertain character, dependent upon a variety of circumstances over which neither he nor his covenantee in many cases would have any control, or be in any wise responsible for, and the main object of our Act of 1824 was to make that fixed and certain which was otherwise variable and uncertain, so that a person, when he first put his name to a covenant of warranty, might know precisely the extent of the liability which, under any possible circumstances, he was assuming. We think, too, that the rule established by this Act is, perhaps, the fairest and most just that could be adopted ; for though, like all general rules, owing to the infirmities of human nature, not by any means perfect, and liable sometimes to operate some injustice, yet it has this very great advantage : that while it may sometimes, as in this very case, give to the covenantee more than in equity and good conscience he ought to have, it never takes from the covenantor more than he ought to lose. For if a person sells land for which he has no title to another, there is certainly no injustice, so far as he is concerned, in taking from him the purchase money and interest for the time which he has had the money, for it is simply taking from him that which, in equity and good conscience, was never his and which he ought never to have had. And, on the other hand, it is an entire mistake to suppose that the loss which the purchaser sustains is correctly represented by the purchase money which he pays.

What he really loses is the *land.* He may have been fortunate enough to buy it under circumstances which enabled him to procure it at a price much below its real value, or he may have greatly added to the value of it· since his purchase, or it may have been given to him by a relative. We are, therefore, of opinion that "the true measure of damages" in this case is the amount of the pur-

chase money mentioned in Caldwell's deed to Pearse, with interest from the date of that deed, together with the costs of the action by which the plaintiffs were ejected.

As to the second question, we are at a loss to perceive how the payment of one thousand dollars to the McGowans or the extinguishment of the bond of the plaintiffs to Miller can be regarded as either offsets to or payments on the claim of ,the plaintiffs under Caldwell's warranty. The rule of law is that "no man can by a voluntary payment of the debt of another make himself that man's creditor."—*Richardson* ads. *McCrady*, 1 Tr. Con. Rep., 473. Or, as it is stated in *Lewis* vs. *Lewis*, 3 Strob., 532: "No one by paying an account against another can maintain an action for the amount without a promise, express or implied, of the original debtor." And as it is said by Lord Kenyon in *Exall* vs. *Partridge*, (8 T. R., 310,) it is an entire mistake to suppose "that when one person is benefited by the payment of money by another, the law raises an *assumpsit* against the former; for, as is said in the same case by Lawrence, J., "one person cannot by a voluntary payment raise an *assumpsit* against another." Test this case by these propositions of law, and take first the money paid by defendant to the attorneys of the McGowans in satisfaction of their claim for mesne profits. It will be remembered that this payment was made March 2, 1876, nearly three years after the judgment in the action of ejectment, in which no damages were recovered against the plaintiffs; there was, therefore, then no debt due by the plaintiffs, for, as the Circuit Judge very properly says: "The recovery by the owners of the fee in that action concluded any further claim against these plaintiffs for rents and profits.—*Sumter* vs. *Lehre*, 1 Tr. Con. Rep., 102; *Colman* vs. *Parish*, 1 McC., 264. There was, therefore, nothing due by them at the time of such payment."

In addition to this, we may say that there was no evidence whatever showing the value of the mesne profits during the period for which the plaintiffs had possession of the premises, and hence this was not only a voluntary payment of what was not then a debt due by the plaintiffs, but, for aught that appears, may have been a payment of much more than the plaintiffs ever were liable for. Nor do we see any propriety in setting off, as the Referee has done, this payment against the interest which accrued on the purchase money from the time of Caldwell's sale to Pearse to the time of the purchase by the plaintiffs; for, besides the fact that the one very largely

exceeded the other, we are at a loss to discover any principle upon which the claim which the McGowans *may once* have had against Caldwell and Pearse for mesne profits during the period the premises were in their possession, (though no such claim, so far as we are informed, seems ever to have been asserted in any legal form,) for which it cannot for a moment be pretended that the plaintiffs were ever liable, could be set off against or extinguish the interest to which, as we have seen, the plaintiffs were clearly entitled under a proper construction of the Act of 1824. To this we may add that though Nott, J., in *Bond* vs. *Quattlebaum*, (1 McC., 584,) did intimate an opinion in somewhat doubtful terms that "there may, perhaps, be cases where the rents and profits in the meantime will take away the claim of the party to interest," yet, in the subsequent cases of *Earle* vs. *Middleton*, (Cheves, 129,) O'Neall, J., comments on and disposes of this *dictum* of Nott, J., saying: "There is no case of eviction, actually or constructively, by *paramount title*, where the party's right to interest would be defeated by reception of rents and profits." His conclusion is based upon the terms of the Act of 1824; and as *Bond* vs. *Quattlebaum* was decided before, and *Earle* vs. *Middleton* after the passage of that Act, it is but fair to conclude that the latter furnishes the true rule.

As to the effect of the extinguishment of the plaintiffs' bond to Miller, it must be borne in mind that the defendant did not purchase the bond and take an assignment of it, but by his payment he cancelled the bond. How can this give him any claim against the plaintiffs any more than if he had voluntarily extinguished a note for a horse or any other debt due by the plaintiffs? It may have benefited the plaintiffs, but that, as we have seen, in the opinion of Lord Kenyon and of Lawrence, J., *supra*, gave him no legal claim against the plaintiffs. He was under no sort of obligation to pay this debt, and was under no compulsion whatever so to do. It was a purely voluntary act, without consultation, with a request from the plaintiffs,—indeed, so far as appears, without even their knowledge. The right of the plaintiffs to recover in this action in no wise depended upon the payment of this bond. In fact, if the holder of the bond had entirely released the plaintiffs from all liability on the bond, their right to bring this action would not have been in the least affected thereby. Nor did the amount of their recovery—the measure of their damages—depend upon the amount of money they may have paid out or were liable for, or whether

they had paid or were liable for anything at all; for that measure was, as we have seen, fixed by the terms of the statute, and neither the bond nor money due or paid thereon constituted any of the elements which went to make up the amount of their damages. These damages were due by the defendant to the plaintiffs, and, under the principles of law above stated, the defendant cannot be allowed to liquidate them by paying them to any one else but the plaintiffs, or their order, or by volunteering to pay debts which the plaintiffs may have owed to others, and for which the defendant was not, and could not, be made responsible. The judgment of the Circuit Court, together with the report of the Referee, must be set aside, and a new trial had according to the principles established by the decision.

Motion granted.

*Willard*, C. J., and *Haskell*, A. J., concurred.

------ ◄●► ------

HEARD NOVEMBER TERM, 1877.